ALLEN, J., concurring.
CLARK C. J., and HOKE, J. dissenting.
a. Are there water powers, rights, and properties on the lands of the respondents as described in the petition capable of being developed for the production of electric power for use in connection with and in addition to the electric power already developed and in use by the respondent, Hendersonville Light and Power Company? Answer: "No."
b. Are there water powers, rights, or properties on the lands of the respondents as described in the petition which are being held by the respondent, Hendersonville Light and Power Company, to be used or to be developed for use in connection with or in addition to any power now actually used by the said respondent, Hendersonville Light and Power Company? Answer: "No."
c. What compensation are defendants, or either of them, entitled to recover for the acquirement by condemnation by the petitioners of the right to divert the water in the manner set forth in (315) the petition? Answer: "Ten thousand dollars ($10,000)."
This case is reported in 169 N.C. 471. It is a condemnation proceeding brought by the plaintiff to condemn certain property called a water power belonging to the defendant. The defendant owns the land on one side of the stream and an undivided half interest in the water power. The plaintiff owns the land on the other side of the stream and a half interest in the water power. All water powers are as much subject to condemnation as any other property, unless it is established that they are "being used or held to be used or to be developed *Page 372 
for use in connection with or addition to any power actually used by such persons, firms, or corporations, serving the general public." If this is not the correct principle to be applied to the facts in this record, the statute conferring the right to condemn water rights is a dead letter, and such rights or power cannot be condemned by the terms of the statute. If we go further, and hold that, although not so used as specified in the statute, the owner may divert the water and convert it into such a water power, there is nothing left for the statute to operate upon. There are few if any streams in North Carolina the waters of which cannot be so diverted and developed into a water power.
The effect of this proviso in the statute (1907, ch. 302, as amended ch. 94, Laws 1913, Gregory's Supp., sec. 2575d) is to place the burden of proof upon the owner of the water power sought to be condemned to introduce evidence sufficient to be submitted to a jury that will bring the property within the exception made by the above quoted proviso. If the owner fails, then the property is subject to condemnation. If the owner offers sufficient competent evidence, it is the duty of the judge to submit the proper issue to the jury. It is earnestly contended upon the rehearing that the defendant has failed to offer any sufficient evidence tending to prove that its half interest in this water power can be developed in any practicable way consistent with well established principles of law for use in connection with or addition to any power actually in use by defendant. That is the only proposition presented upon this rehearing.
In his opinion Mr. Justice Allen doubts if there is any evidence in the record sufficient to go to the jury tending to bring the defendant's half interest in the water power within the exception exempting it from condemnation. Further examination of the case compels the majority of the Court to the conclusion that there is no such evidence.
(316) We now conclude that all the evidence, taken in its most favorable light for defendant, discloses that the only feasible method by which the defendant can develop this water power for use is to construct a dam to the middle of the stream and divert half the water through a flume on its own side of the river. This is the only practicable method pointed out by the evidence, and to develop it in that manner would violate a well settled principle of law.
A majority of this Court held on the former hearing that "Where a stream passes between the lands of opposite riparian owners, one of such owners cannot build a dam to the middle of the stream and divert half the water through a flume, although he may return it into the stream before it leaves his land, since in such case each riparian owner is entitled to the whole bulk of the stream, undivided and indivisible." 86 S.E. 296. *Page 373 
That this conclusion is sustained by the overwhelming weight of authority is demonstrated in the opinion of Mr. Justice Allen in this case, concurred in by Mr. Justice Walker and the writer. For additional supporting authority, see Waters and Water-courses, Cent. Dig., sec. 72 Dec. Dig., 80. A reexamination of the evidence shown only one plan of development proposed by defendant. Mr. Oates, the president and general manager of defendant, testified that he had made plans and calculations to develop his side of the Narrows. He further says: "Owing to my ownership only to the middle of the stream, my plan was to take out half of the water by means of a diverting dam, and convey it on the north bank to the mouth of Pulliam's Creek, utilize it through my water wheels and turn it back into the river on my own land. I had several estimates made as to the cost of that development, and have had it surveyed and worked out by several engineers. The first was Mr. Charles E. Waddell."
The witness was asked the specific question: "Tell us your plans for the development of the Narrows, and how you expect to do it, the cost of it, what profit there will be in it." To this he responded: "It simply involves the use of a diverting dam; it is merely a projecting wall built into the stream to divert half the water of Green River into a canal or race which we will use for a certain distance to a settling basin, where we can accumulate water and acquire a static head, and then convey the water by means of a steel flume to wheels in the power house situated at the mouth of Pulliam's Creek, and the power applied and transmitted."
Upon cross-examination he was asked as to the effect of taking half of the water, and he replied: "The other half will be left in the stream and he can get it if he wants it. I will give him permission to go over and get it. They could not do it without my permission and without going on my lands."
Witness Shearer, hydraulic engineer, testified for defendant: (317) "I made an examination of the stream with a view of determining whether it is practicable for the owner of the north bank to divert one-half the stream from the channel, use it for developing water power, and return to the stream on the same land. As an engineering proposition, approximately one-half the volume of the water of the stream can be diverted to the Torrence side and developed into a water power and returned. At or near the head of the Torrence tract I would begin a canal, ditch, or open earth flume around the side of the hill. Would extend the mouth of the ditch into the stream at this point and carry this water around on the Torrence property to a point probably 200 to 300 feet down stream, from a little basin, carry it from there by a pipe, flume, or other method to the power-house. *Page 374 
None of the witnesses examined proposed any plan of development except the plan set out in the testimony of Oates and Shearer.
After a critical examination of all the evidence, we are unable to find a single suggestion for developing and using the defendant's half of this water power except that which contemplates taking one-half the water out of the stream.
His Honor instructed the jury that the burden of proof was on defendant to show by the greater weight of evidence that this water power was capable of being developed for use in connection with the power now used by defendants, and further instructed the jury that upon all the evidence, if believed, to answer issues a and b "No." Applying the principles laid down in this opinion, we think the charge should be approved.
The issue as to damages was fairly submitted to the jury in a full and clear charge, of which the defendants have no right to complain. The petition to rehear is allowed, and upon such rehearing we find in the trial as had in the Superior Court.
No error.
All the costs of this Court will be taxed against defendants.